UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



DEREK LIVINGSTON,

                Petitioner,

    -v-

WILLIAM BROWN, Superintendent, Eastern
Correctional Facility,

                Respondent.

No. 07-CV-7172 (KMK) (GAY)

ORDER ADOPTING REPORT
AND RECOMMENDATION

KENNETH M. KARAS, District Judge:

    Petitioner Derek Livingston ("Petitioner"), proceeding pro se, brings an application for a

writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction for burglary in

the second degree, grand larceny in the third degree, and criminal possession of stolen property

in the third degree. On September 7, 2007, the case was referred to Magistrate Judge George A.

Yanthis pursuant to 28 U.S.C. § 636(b). (Dkt. No. 2.) On November 16, 2010, Magistrate Judge

Yanthis issued a thorough Report and Recommendation ("R&R"), concluding that this Court

should deny the Petition in its entirety. (Dkt. No. 13.) For the reasons stated herein, the Court

adopts the conclusions of the R&R and denies Petitioner's claims for habeas relief.

## I. Background

    The Court adopts and incorporates herein the factual and procedural background of this

case as set forth by Magistrate Judge Yanthis in the R&R, none of which Petitioner contests.

    After a jury trial in Westchester County Court, Petitioner was convicted of burglary in

the second degree, grand larceny in the third degree, and criminal possession of stolen property

in the third degree under N.Y. Penal Law §§ 140.25, 155.35, 165.50.

Petitioner appealed his judgment of conviction to the Appellate Division, Second

Department. On direct appeal, Petitioner argued that the evidence presented was not legally

sufficient to show burglary in the second degree, as it failed to "establish that the defendant

actually entered or had been in the burglarized apartment"; that Petitioner was denied a fair trial

because the trial court failed to give the jury a circumstantial evidence charge; that the trial court

committed reversible error by precluding Petitioner's statement to Detective Jankowski; and that

Petitioner's sentence as a persistent violent felony offender was harsh and excessive. (Resp't's

R. of Exs. ("Respt.'s Ex.") Ex. 6, at 26, 28, 30, 32.)

On October 17, 2006, the Second Department unanimously affirmed Petitioner's

conviction, rejecting each of Petitioner's arguments. *See People v. Livingston*, 810 N.Y.S.2d

368 (App. Div. 2006). The substantive part of that court's opinion reads as follows:

> Viewing the evidence in the light most favorable to the prosecution, we
> find that it was legally sufficient to establish the defendant's guilt of burglary in
> the second degree beyond a reasonable doubt. Moreover, upon the exercise of
> our factual review power, we are satisfied that the verdict of guilt is not against
> the weight of the evidence.
> The defendant's contention that the trial court erred in failing to instruct
> the jury on circumstantial evidence is unpreserved for appellate review as he
> never requested such an instruction at trial. In any event, since the evidence of
> the defendant's guilt was not entirely circumstantial, the trial court did not err in
> failing to give a circumstantial evidence charge.
> The sentence imposed was not excessive.
> The defendant's remaining contention is without merit.

*Id.* at 368-69 (citations omitted).

The New York Court of Appeals summarily denied Petitioner leave to appeal. *See*

*People v. Livingston*, 854 N.E.2d 1285 (2006). Petitioner, proceeding pro se, filed the instant

Petition for a Writ of Habeas Corpus on or about August 10, 2007, asserting two grounds for

habeas relief. First, Petitioner claims the evidence presented against him was legally insufficient

2

to sustain a conviction of burglary in the second degree. (Pet. at unnumbered page 4.) Second, Petitioner claims the trial court's preclusion of Petitioner's statement to Detective Jankowski violated Petitioner's rights under the Confrontation Clause. (*Id.*)

Magistrate Judge Yanthis concluded that Petitioner's claims to habeas relief were without merit and that the Petition should be denied in its entirety. (R&R 16-17.) Petitioner filed timely objections to the R&R, specifically challenging the R&R's conclusions as to each claim for relief (Affirmation in Reply to R&R ("Obj.") 2, 11, 12).

## II. Discussion

### A. Standards of Review

#### 1. Review of Magistrate Judge's Report & Recommendation

A district court reviewing a report and recommendation addressing a dispositive motion "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also Donahue v. Global Home Loans & Fin., Inc.*, No. 05-CV-8362, 2007 WL 831816, at *1 (S.D.N.Y. Mar. 15, 2007). Under 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), parties may submit objections to the magistrate judge's report and recommendation. The objections must be "specific" and "written," Fed. R. Civ. P. 72(b)(2), and must be made "[w]ithin 14 days after being served with a copy of the recommended disposition," *id.*; *see also* 28 U.S.C. § 636(b)(1), plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(d), or a total of seventeen (17) days, see Fed. R. Civ. P. 6(a).

Where a party submits timely objections to a report and recommendation, as Petitioner has here, the district court reviews de novo the parts of the report and recommendation to which the party objected. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); *Donahue*, 2007 WL

3

831816, at *1. The district court "may adopt those portions of the . . . report [and

recommendation] to which no specific written objection is made, as long as the factual and legal

bases supporting the findings and conclusions set forth in those sections are not clearly

erroneous or contrary to law." *Eisenberg v. New Eng. Motor Freight, Inc.*, 564 F. Supp. 2d 224,

226 (S.D.N.Y. 2008) (internal quotation marks omitted).

<u>2. Review of Petition for Habeas Corpus Relief</u>

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"),

> [a]n application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim . . . resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States.

28 U.S.C. § 2254(d)(1). Thus, Petitioner is entitled to habeas corpus relief only if he can show

that "the state court 'unreasonably' applied law as established by the Supreme Court in ruling on

petitioner's claim, or made a decision that was 'contrary to' it." *Cousin v. Bennett*, 511 F.3d

334, 337 (2d Cir. 2008) (quoting 28 U.S.C. § 2254(d)(1)). A state court decision is "contrary to"

clearly established federal law when it "arrives at a conclusion opposite to that reached by [the

Supreme] Court on a question of law," or if it "decides a case differently than [the Supreme]

Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-

13 (2000). "Unreasonableness is determined by an 'objective' standard." *Gersten v. Senkowski*,

426 F.3d 588, 607 (2d Cir. 2005) (quoting *Williams*, 529 U.S. at 409.) "While 'the precise

method for distinguishing objectively unreasonable decisions from merely erroneous ones' is

somewhat unclear, 'it is well-established in [the Second] Circuit that the objectively

unreasonable standard of § 2254(d)(1) means that petitioner must identify some increment of

incorrectness beyond error in order to obtain *habeas* relief.'" *Sorto v. Herbert*, 497 F.3d 163, 169 (2d Cir. 2007) (alteration omitted) (quoting *Torres v. Berbary*, 340 F.3d 63, 69 (2d Cir. 2003)). The state court's determination of factual issues is presumed correct, and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Hoi Man Yung v. Walker*, 468 F.3d 169, 176 (2d Cir. 2006).[1]

B. Analysis

1. Insufficient Evidence

As the first ground for habeas relief, the Petition asserts that the evidence was legally insufficient to support the verdict. (Pet. at unnumbered page 4.) Magistrate Judge Yanthis concluded that because "a rational jury could have found beyond a reasonable doubt that petitioner was guilty of the crime of second degree burglary," the state court's adjudication of Petitioner's sufficiency claim did not contravene or unreasonably apply federal law. (R&R 12.)

In his objection to the R&R, Petitioner argues that the state court unreasonably applied clearly established federal law "because, in absence of evidence that he 'actually entered' within the four walls or beneath the roof of the building, no rational trier of fact could have found him guilty of burglary beyond a reasonable doubt." (Obj. 2.)[2] Petitioner contends that Magistrate Judge Yanthis "relie[d] solely on the witnesses' trial testimony" to conclude the trial court

---

[1] Pleadings submitted by pro se litigants are held to a lesser standard than those drafted by practicing attorneys. *See Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008) ("Even in the formal litigation context, *pro se* litigants are held to a lesser pleading standard than other parties."). Because Petitioner is proceeding pro se, the Court construes his submissions liberally so as to interpret them to raise the strongest arguments that they suggest. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).

[2] While Petitioner does not raise this specific point in his Petition, the Court is willing to liberally construe his petition as having raised this argument.

5

record contains sufficient support for a conviction for burglary in the second degree, even though "none of the witnesses placed the petitioner within the four walls of the building." (*Id.* at 10.) In his objections to the R&R, Petitioner interprets the relevant section of New York Penal Law to require "intru[sion] into some enclosed space in or connected to a building." (*Id.* at 6.)

To analyze the sufficiency of the evidence for a state conviction, a federal court looks to the state law to determine the elements of the crime. *See Langston v. Smith*, 630 F.3d 310, 314 (2d Cir. 2011); *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002). "A petitioner bears a very heavy burden in convincing a federal habeas court to grant a petition on the grounds of insufficiency of the evidence." *Policano v. Herbert*, 507 F.3d 111, 116 (2d Cir. 2007) (alteration and internal quotation marks omitted). Indeed, a claim of insufficient evidence fails if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

The relevant New York statute provides that "[a] person is guilty of burglary in the second degree when he knowingly enters or remains unlawfully in a building with intent to commit a crime therein, and when [*inter alia*] . . . the building is a dwelling." N.Y. Penal Law § 140.25. Petitioner argues that the evidence "was insufficient to prove that the petitioner 'entered' in the building within the meaning" of § 140.25. (Obj. 11.) However, even Petitioner acknowledges that the witness testimony establishes Petitioner's presence near and flight from the victim's residence and his possession of property from that residence. (Pet. Aff. 3-4.) The testimony, along with additional circumstantial evidence, was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that Petitioner entered the victim's apartment

6

through a locked window, removed several items of value, and fled the scene in exclusive possession of the stolen property.[3]

A conviction may rest entirely on circumstantial evidence. *See United States v. Wexler*, 522 F.3d 194, 207 (2d Cir. 2008) (noting that a federal court should consider the prosecution's case in its totality rather than its parts, and that the prosecution's case may rest solely on circumstantial evidence); *United States v. Martinez*, 54 F.3d 1040, 1043 (2d Cir. 1995) (noting that a jury's verdict may be based entirely on circumstantial evidence); *see also People v. Lewis*, 479 N.E.2d 802, 802 (N.Y. 1985) (affirming defendant's conviction as proven beyond a reasonable doubt upon "[v]iewing the entirely circumstantial evidence in a light most favorable to the prosecution and giving it the benefit of every reasonable inference to be drawn therefrom"). Specifically, in New York, circumstantial evidence may be used to prove the "entry" element of burglary. *See People v. Durham*, 670 N.Y.S.2d 235, 237 (App. Div. 1998). In *Durham*, the defendant was in a car with witnesses who overheard him planning to steal an item from a farmhouse. Witnesses in the car testified that the car parked a short distance away from the house, defendant and an accomplice left the car, a loud bang was heard, and defendant and his accomplice returned ten to fifteen minutes later with property identified by the houseowner as stolen. *Id.* at 236. The defendant argued that "the prosecution was required to

---

[3] At trial, testimony was presented from, among other people, Barbara Riker about the break-in and the missing items from her apartment, a neighbor who observed Petitioner near Ms. Riker's ground level apartment and who observed the open window with the discarded screen from that window, and the computer table with no computer on it in Ms. Riker's apartment, from eyewitnesses who observed the car chase between the neighbor and Petitioner, and from the police detective to whom Petitioner revealed the location of some of the proceeds of the burglary.  (R&R 5-12.)

7

prove to a moral certainty that defendant entered the . . . house." *Id.* at 237.  The Appellate

Division responded:

> "[T]here is both direct and circumstantial evidence of guilt. *Although there was no direct evidence of defendant's entry*, there was direct evidence that he was aware of [the accomplice's] plan to burglarize the house, left the car to accompany [the accomplice] and returned with stolen property in his possession. Given [the houseowner's] testimony and the loud bang heard by [witnesses], the jury was clearly permitted to infer either that defendant unlawfully entered the house with the intent to steal property or that he intentionally aided [the accomplice] to commit the crime of burglary . . . ."

*Id.* (emphasis added) (citations omitted).

Thus, contrary to Petitioner's argument, the "entry" element of a burglary conviction

may be supported by evidence that is entirely circumstantial, and the prosecution does not have

to provide *direct* evidence that a defendant entered a building so long as the circumstantial

evidence allows the jury to infer as much. *See id.*; *see also People v. Gaines*, 572 N.Y.S.2d 214,

214 (App. Div. 1991) (affirming burglary conviction "in this wholly circumstantial evidence

case" where evidence showed "entry into the burglarized dwellings was accomplished . . . by

forced entry through windows and . . . the fingerprints found on or near the points of entry

matched those of defendant"); *People v. Kitlitz*, 529 N.Y.S.2d 174, 175 (App. Div. 1988) ("We

reject the defendant's contention that the People may not establish that he engaged in conduct

tending to effect an unlawful entry entirely through circumstantial evidence." (citations

omitted)).

In this case, the Second Department found that the evidence was legally sufficient to

establish Petitioner's guilt beyond a reasonable doubt, despite there being no direct evidence of

Petitioner's "entry" into the Riker apartment. *Livingston*, 810 N.Y.S.2d at 368.  Magistrate

Judge Yanthis found that this conclusion was neither contrary to nor an unreasonable application

8

of *Jackson v. Virginia*. (R&R 13.) Upon a de novo review, this Court agrees, particularly in light of the testimony indicating that Petitioner was observed carrying a box and two bags away from the scene of the burglary, that upon being observed Petitioner fled the scene in his car (R&R 10-12), and that Petitioner was found in possession of various items later identified as stolen property for which he gave an incredible explanation, (*id.* at 5-10). A defendant's presence near burglarized premises may be sufficient to establish his identity as the burglar, particularly if the defendant offers a false explanation for his presence. *See People v. Johnson*, 638 N.Y.S.2d 55, 56 (App. Div. 1996), *appeal denied,* 670 N.E.2d 1353 (N.Y. 1996) (evidence was sufficient to support conclusion that defendant's presence in burglarized premises was not licensed or privileged where, among other things, defendant was found in the area from which a wallet was stolen, later claimed he found the wallet, and was found hiding); *People v. Salvatore*, 577 N.Y.S.2d 652, 652 (App. Div. 1991) (looking to the "entire range of [defendant's] reactions," including a false explanation for his presence in a restricted area, to determine that evidence supported conclusion that defendant's entry onto the burgled premises was not privileged). Furthermore, a defendant's possession of the fruits of a burglary may also provide sufficient evidence of the "entry" element, particularly where, as here, there is direct evidence of Defendant's presence near the premises and evidence of the means by which the residence was unlawfully entered. *See People v. Rosario*, 551 N.Y.S.2d 599, 600 (App. Div. 1990) (holding evidence sufficient to support burglary conviction where defendant observed entering boiler room adjacent to burglarized factory, exiting room carrying goods manufactured in factory, and hole between boiler room and factory was later discovered).

Accordingly, the Court denies Petitioner's claims for habeas relief on the basis of insufficient evidence.

### 2. Preclusion of Hearsay Evidence

Petitioner made (at least) three statements to the police on October 6, 1999 relating to the events of this case. First, at 1:47 P.M., Petitioner called the Yonkers Police Department from a pay phone. (Trial Tr. ("Tr.") 664-65, 670.) He stated to the answering officer that he had been at the Yonkers Board of Education that day, and as he was leaving, he found a bag containing items including costume jewelry. (Respt.'s Ex. 1. (transcript of telephone call).)[4] Petitioner then claimed to have seen a young man carrying two other bags; upon Petitioner's speaking to him, the man dropped one bag and ran off. (*Id.*) Petitioner then stated that he found a box containing computer equipment on the same block, and placed all three items — the two bags and the box — into his car. (*Id.*)

Second, around 4:00 P.M. that day, Petitioner arrived at the Mt. Vernon Police Department to give information about some property. (Tr. 707, 709.) This statement was related at trial by a former Mt. Vernon police officer, Richard Morra. (*Id.* at 708-09.) Petitioner stated that he had been at the Yonkers Board of Education, and that as he was leaving he saw a black male. As Petitioner approached the man, the man dropped a black bag, which Petitioner picked up. At that time Petitioner also observed a box in a hedge or bush near the area, retrieved it, and discovered computer equipment inside. (*Id.* at 709-10.) He placed all of this property into his

---

[4] This transcript of this conversation was not received into evidence at Petitioner's trial but was admitted to aid the jury. The jury heard a tape recording of the call played. (Tr. 669-72.)

10

car. (*Id.* at 710.) He later directed officers to a shopping cart on a street in Mt. Vernon containing a box with computer equipment and a black bag; this property was later turned over to the Yonkers Police Department. (*Id.* at 711, 716.) Ms. Riker later identified this property as hers. (*Id.* at 441-42.) On cross-examination, Morra testified that Petitioner had made a reference to why he had been at the Yonkers Board of Education that day, but he could not remember the reason Petitioner had given, recalling only that Petitioner had mentioned an affiliation with the Board of Education. (*Id.* at 723-25.)

Third, after his arrest, Petitioner was interrogated by Charles Jankowski, a Yonkers Police Detective, who was called as a defense witness. (*Id.* at 854.) After being Mirandized by Jankowski (*id.* at 856), Petitioner apparently spoke to Jankowski for half an hour, (*id.* at 858-59). At trial, the prosecutor attempted to preclude Jankowski from testifying, on the ground that Jankowski's testimony would elicit hearsay. The trial judge allowed Petitioner's counsel to call Jankowski and ask Jankowski about what he did with Petitioner that day, for the limited purpose of trying to have the jury draw a conclusion that Petitioner was cooperative. However, the judge prevented Petitioner's trial counsel from eliciting any testimony from Jankowski regarding the substance of what Petitioner said on that occasion, finding that it would be inadmissible hearsay. (Tr. 645 ("The actual statement is inadmissible because it's not an admission. Exculpatory. Not through another witness anyway."); *id.* at 692-696 ("You objected to [the substance of Petitioner's answers to interrogation questions] as being hearsay, and I would agree with you. They're self serving. But, the facts from which an inference of cooperation, innocent conduct, if you will, with the police is something that the defense can bring out."); *id.* at 859 ("Let's get the rules here. You're not gonna bring out the defendant's statement through this witness. It would

11

be hearsay.").) Petitioner's counsel later argued that Petitioner's statement to Jankowski was a "continuation" of his earlier statements on that same day, and that Jankowski's testimony regarding the substance of the statement should be admissible as "a question of wholeness." (*Id.* 866.) The trial judge again ruled that the evidence would be excluded as hearsay. (*Id.*)

Petitioner contends, in substance, that the trial court's hearsay ruling was wrong, as it "denied his constitutional rights under the Confrontation Clause because the trial court would not permit him to cross-examine Detective Jankowski." (Pet. Aff. 6.) Specifically, Petitioner claims that Morra could not remember "critical portions" of Petitioner's earlier statement, making the testimony of Jankowski crucial to his defense. (*Id.* 7.) Petitioner argues that Jankowski would have testified that Petitioner told him that "he [Petitioner] had gone to the Board of Education in Yonkers that day to inquire about further employment and his paycheck." (*Id.* 7.) Petitioner's statement was not, he says, being "elicited for its truth"; rather, Jankowski's testimony would have served to "provide context, rebut the faulty memory of Morra, and . . . describe Petitioner's conduct." (*Id.* 8.) According to Petitioner, the statement "would have created a new ground for reasonable doubt" and "was material to the presentation of [Petitioner's] defense." (Obj. 13.) Petitioner claims that the preclusion of this testimony was an unreasonable application of clearly established federal law, citing *Chambers v. Mississippi*, 410 U.S. 284 (1973). (Pet. Aff. 8.)

Magistrate Judge Yanthis concluded that the correct basis for Petitioner's claim is an alleged violation of his Constitutional right to present a complete defense. (R&R 14.) Petitioner raised the alleged violation of his right to present a complete defense on direct appeal; the Second Department rejected the claim on its merits, without comment. *See Livingston*, 810

12

N.Y.S.2d 368.[5] Petitioner specifically objects to Magistrate Judge Yanthis's conclusion that the state court's decision precluding Petitioner's statement to Detective Jankowski was neither contrary to, nor involved an unreasonable application of, established federal law. (Obj. 12.) Therefore, the Court reviews that section of the R&R de novo.

"[A] criminal defendant has a constitutional right — grounded in the Sixth Amendment's Compulsory Process and Confrontation Clauses and the Fourteenth Amendment's Due Process Clause — to 'a meaningful opportunity to present a complete defense.'" *Hawkins v. Costello*, 460 F.3d 238, 243 (2d Cir. 2006) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)); *see also Holmes v. South Carolina*, 547 U.S. 319, 324-25 (2006) (following *Crane*); *Washington v. Schriver*, 255 F.3d 45, 56 (2d Cir. 2001) ("The right to call witnesses in order to present a meaningful defense at a criminal trial is a fundamental constitutional right secured by both the Compulsory Process Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment."). "Indeed, 'few rights are more fundamental than that of an accused to present witnesses in his own defense.'" *Hawkins*, 460 F.3d at 243 (quoting *Chambers*, 410 U.S. at 302.). This right, however, is not absolute: "A defendant 'must comply with established rules

_____

[5] Specifically, Petitioner argued to the Second Department that he "[was] denied a fair trial where the trial court allowed partial statements offered by the People, but refused a complete statement offered by the defense" (Respt.'s Ex. 6, at 30), and cited *Chambers* and *People v. Carroll*, 740 N.E.2d 1084 (N.Y. 2000), (*id.* at 31). *Carroll* held, among other things, that "[a] court's discretion in evidentiary rulings is circumscribed by the rules of evidence and the defendant's constitutional right to present a defense." 740 N.E.2d at 1089 (citing *Chambers*, 410 U.S. at 294). Petitioner cast his argument in terms of federal constitutional rights, referencing his "constitutional right to present evidence that has [sic] bearing on a material issue at trial." (Respt.'s Ex. 6, at 31.) This argument, coupled with the case citations, was enough to "fairly present" the claim to the Appellate Division. *Jackson v. Edwards*, 404 F.3d 612, 618-19 (2d Cir. 2005).

of procedure and evidence designed to assure both fairness and reliability,'" *id.* (quoting *Chambers*, 410 U.S. at 302), and "the 'accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence,'" *id.* (quoting *Taylor v. Illinois*, 484 U.S. 400, 410 (1988)); *see also Faison v. Comm'r*, No. 09-CV-684, 2011 WL 652547, at *4 (D. Conn. Feb. 11, 2011) (same); *Bowman v. Ercole*, No. 09-CV-4801, 2010 WL 6620879, at *28 (S.D.N.Y. Sept. 1, 2010) (same), *adopted by*, 2011 WL 1419614 (S.D.N.Y. Apr. 11, 2011).

Despite these limits, application of state evidentiary rules, including hearsay rules, resulting in the exclusion of exculpatory evidence can, under certain circumstances, violate a defendant's right to a meaningful opportunity to present a complete defense. *See Holmes*, 547 U.S. at 324-25 (noting that despite "broad latitude," state and federal rules for the exclusion of evidence may not infringe upon a defendant's right to present a complete defense); *Chambers*, 410 U.S. at 302 (holding unconstitutional a state exclusionary rule which barred the impeachment of a defendant's own witness where the witness had made self-incriminating statements). In the Second Circuit, to determine whether the exclusion of evidence violated a criminal defendant's right to present a complete defense, courts begin by considering "the propriety of the trial court's evidentiary ruling." *Hawkins*, 460 F.3d at 244 (internal quotation marks omitted). If the evidence was *wrongly* excluded under state law, the question then is "whether the omitted evidence evaluated in the context of the entire record creates a reasonable doubt that did not otherwise exist." *Id.* (alterations and internal quotation marks omitted).[6] If

---

[6] Of course, a state court's erroneous ruling on state evidentiary law is not itself grounds for habeas relief. *See Chambers*, 410 U.S. at 302-03; *Hawkins*, 460 F.3d at 244.

the state evidentiary rule was correctly applied, the "inquiry is more limited" — to "whether the evidentiary rule is 'arbitrary' or 'disproportionate to the purposes it is designed to serve.'" *Id.* (quoting *United States v. Scheffer*, 523 U.S. 303, 308 (1998)) (alterations and internal quotation marks omitted); *see also Singh v. Greene*, No. 10-CV-4444, 2011 WL 2009309, at *17 (E.D.N.Y. May 20, 2011) (applying this test); *Jones v. Greene*, No. 05-CV-8997, 2007 WL 2089291, at *6 (S.D.N.Y. July 20, 2007) (same).

Here, the trial court's hearsay ruling was correct as a matter of New York State law. Contrary to Petitioner's argument, the precluded statement was elicited for its truth. Though it is somewhat unclear from the trial transcript, it appears that Petitioner first sought to introduce the statement to show that he was cooperative with the police (Tr. 694); later, his counsel argued that the statement was admissible to explain admissions introduced against Petitioner by the prosecution, *(id.* at 865-66). The Petition in this case relies on something approaching this latter purpose. (Pet. Aff. 8 ("The statement was sought to be introduced to provide context, rebut the faulty memory of Morra, and to describe Petitioner's conduct.").) It is not clear how admission of the substance of Petitioner's statement to Janowski — as opposed to the *fact* that he offered information to the police voluntarily, to which Morra had testified (Tr. at 720-21) — would show Petitioner's cooperation. In any event, none of these purposes could have been served unless the statement was also introduced for its truth, as the inference of Petitioner's cooperation would be undercut if he was lying, and the statement would only clarify prior testimony, "provide context," or "describe Petitioner's conduct" if the statement was true. *See People v. Reynoso*, 534 N.E.2d 30, 31 (N.Y. 1988) (holding that a defendant's exculpatory statement was

properly excluded because "the statement was irrelevant unless offered to prove the truth of the matter asserted . . . and for that purpose it was inadmissible hearsay").

Moreover, "[t]he general rule [in New York] is that a party's self-serving statement is inadmissible at trial when offered in his or her favor, and it may not be introduced either through the testimony of the party or through the testimony of a third person." *People v. Haddock*, 917 N.Y.S.2d 634, 635 (App. Div. 2010); *see also People v. Sene*, 887 N.Y.S.2d 8, 9 (App. Div. 2009) (holding that preclusion of defendant's exculpatory statement was proper, as it was "essentially a factual assertion of [defendant's] innocence constituting hearsay"); *People v. Valderrama*, 728 N.Y.S.2d 812, 813-14 (App. Div. 2001) (affirming preclusion of defendant's partially exculpatory statements made to a detective following arrest as inadmissible hearsay). Even though the prosecution had introduced Petitioner's earlier statements (the telephone call and the statement to Morra), Petitioner was not entitled to introduce the Jankowski statement on a theory of completeness, because it was a separate statement made on a distinct occasion to a different person than those who took the other two statements introduced by the prosecution. *See People v. Hubrecht*, 769 N.Y.S.2d 36, 37 (App. Div. 2003) (holding, where defendant made three statements, one of which was inculpatory and was the only one introduced by the prosecution, that there was "no exception to the hearsay rule under which the two exculpatory statements could be admitted," and that the "rule of completeness" did not apply "because the three statements were made to different persons in different settings and could not be viewed as a single continuous narrative or process of interrogation");[7] *see also Sene*, 887 N.Y.S.2d at 9

---

[7] Hubrecht's subsequent habeas petition, in which he raised the same completeness argument, was denied. *See Hubrecht v. Artuz*, No. 05-CV-5861, 2008 WL 216315, at *15-17

16

(holding a hearsay statement precluded even though prosecution had introduced a "substantially similar" 911 call made by defendant); *People v. Armstrong*, 621 N.Y.S. 2d 21, 21 (App. Div. 1994) (holding that statements made at street stop and during custodial interrogation at police precinct fifty minutes later were not part of "a continuous interrogation" for purposes of the completeness rule). Therefore, the Court concludes that Petitioner's statement was properly excluded under New York's hearsay rule.

The next question, then, is whether the trial court's correct application of New York hearsay law was "arbitrary or disproportionate to the purposes [that law is] designed to serve." *Hawkins*, 460 F.3d at 244 (quoting *Scheffer*, 523 U.S. at 308) (internal quotation marks omitted). The Supreme Court has described such "arbitrary or disproportionate" rules as ones that "exclude[] important defense evidence but . . . d[o] not serve any legitimate interests." *Holmes*, 547 U.S. at 325. The Supreme Court has only found the exclusion of evidence to be "unconstitutionally arbitrary or disproportionate . . . where it has infringed upon a weighty interest of the accused." *Scheffer*, 523 U.S. at 308; *see also Clark v. Arizona*, 548 U.S. 735, 790 (2006) (same); *Holmes*, 547 U.S. at 324 (same). "[W]ell-established rules of evidence [that] permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury" do not fall within this category. *Holmes*, 547 U.S. at 326. As a general matter, the hearsay rule is another such "well-established rule." *See Bowman*, 2010 WL 6620879, at *29 ("One such

(S.D.N.Y. Jan. 24, 2008), *adopted by*, 2010 WL 3187233 (S.D.N.Y. Aug. 11, 2010), *aff'd by*, 457 Fed. App'x 29, 31 (2d Cir. 2012) (summary order).

17

well-established rule of procedure and evidence is the hearsay rule."); *United States v. Persico*,
No. 04-CR-911, 2006 WL 3246922, at \*2 (E.D.N.Y. Nov. 8, 2006) (rejecting as a "non-starter"
the argument that the hearsay rules are "arbitrary — and therefore unconstitutional" simply
because they categorically exclude certain evidence that could prove useful to defendants); *see
also Scheffer*, 523 U.S. at 309 (citing to Federal Rule of Evidence 802 for the proposition that
"[s]tate and Federal Governments unquestionably have a legitimate interest in ensuring that
reliable evidence is presented to the trier of fact in a criminal trial"); *Chambers*, 410 U.S. at 298
("The hearsay rule, which has long been recognized and respected by virtually every State, is
based on experience and grounded in the notion that untrustworthy evidence should not be
presented to the triers of fact.").

New York's hearsay rules are not "disproportionate to the purposes [they are] designed to
serve." *Hawkins*, 460 F.3d at 244 (quoting *Scheffer*, 523 U.S. at 308) (internal quotation marks
omitted). In fact, hearsay statements are generally excluded because they "they lack the
conventional indicia of reliability: they are usually not made under oath or other circumstances
that impress the speaker with the solemnity of his statements; the declarant's word is not subject
to cross-examination; and he is not available in order that his demeanor and credibility may be
assessed by the jury." *Chambers*, 410 U.S. at 298; *see also Morales v. Portuondo,* 154 F. Supp.
2d 706, 723 (S.D.N.Y. 2001) (same); *People v. Gibian*, 907 N.Y.S.2d 226, 237 (App. Div. 2010)
(same). Thus, the purpose of hearsay rules is to exclude unreliable testimony. *See id.*; *see also
Nucci ex rel. Nucci v. Proper*, 744 N.E.2d 128, 130 (N.Y. 2001) (noting that hearsay statements
may only be admitted if they fall within a "recognized exception" to the hearsay rule "and then

18

only if the proponent demonstrates that the evidence is reliable" (internal quotation marks omitted)).

This purpose was amply served by the exclusion of the Jankowski statement, as it lacked any indicia of reliability, with the (possible) exception that it was given voluntarily (after Petitioner had received *Miranda* warnings). (Tr. 858); *see Nucci*, 744 N.E.2d at 131 ("Relevant factors [in assessing reliability] include spontaneity, repetition, the mental state of the declarant, absence of motive to fabricate, unlikelihood of faulty recollection and the degree to which the statement was against the declarant's interest." (alterations, citations, and internal quotation marks omitted)). Petitioner's statement was entirely uncorroborated except by his own earlier, also self-serving statements. *Cf. Chambers*, 410 U.S. at 300 (describing factors that provided "considerable assurance" of the reliability of hearsay statements, including "corroborat[ion] by some *other* evidence in the case" (emphasis added)). The statement was entirely self-serving and exculpatory, and Petitioner had an obvious motivation to lie. *See United States v. Camacho*, 163 F. Supp. 2d 287, 308 (S.D.N.Y. 2001) ("Statements to police and prosecutors by criminal suspects or defendants are not considered to be reliable, because the declarant generally wants to obtain favorable treatment; [defendant's] statements to the police were especially unreliable because they were self-exculpatory."); *People v. Dvoroznak*, 512 N.Y.S.2d 180, 180-81 (App. Div. 1987) (upholding conviction where trial court excluded defendant's post-arrest statement to police on grounds that "the motivating factor of making an exculpatory statement after an arrest could lead one to believe that the defendant did not tell the truth and that the proffered testimony was therefore inadmissible hearsay" (internal quotation marks omitted)).

19

Even as applied in Petitioner's case, moreover, the New York hearsay rules did not deprive Petitioner of his right to present a complete defense. First, the New York hearsay rules, which operated in Petitioner's case to exclude any testimony by Jankowski on the substance of Petitioner's statement, did not infringe upon a "weighty interest" of Petitioner or result in the exclusion of "important defense evidence." The jury heard Petitioner's 911 call and his earlier statement to Morra, and these statements, Petitioner concedes, were almost exactly the same as the statement Petitioner says he later gave to Jankowski. (Pet. Aff. 7 ("During Petitioner's initial conversations with the Mount Vernon police, detectives Morra and Gleason, Petitioner gave basically the same statement as he later gave to Detective Jankowski . . . . [T]he prosecutor introduced almost the exact same statement through his witness detective Morra.").) All Jankowski's testimony would have added, Petitioner admits, was "that [Petitioner] had gone to the Board of Education in Yonkers that day to inquire about further employment and his paycheck." (*Id.*) Petitioner argues that Morra "could not recall" this portion of Petitioner's earlier statement,[8] and that it was "critical" to "part of Petitioner's defense theory." (*Id.*)

_____

[8] *See* Tr. 724-25:

[Petitioner's Counsel]: Did [Petitioner] indicate to you that he had gone up there to see about a paycheck?

[Morra]: I remember him saying he had an affiliation with the Board of Education, but I don't exactly remember exactly what he said.

[Petitioner's Counsel]: But, he did indicate that was why he was in the area, correct?
[Prosecutor]: Object to the form of the question, judge.

THE COURT: This would not be an exception to the hearsay rule because it's really not an admission. I'll sustain the objection.

[Petitioner's Counsel]: Respectfully, as to the wholeness. [The prosecutor] put in a portion of this.

THE COURT: Okay. All right. He's objecting only to the form of the question now.

[Petitioner's Counsel]: Thank you, sir. But, Mr. Livingston did indicate to you that the reason why he was in that area was because he was at the Board of Education, that's your

However, the material portion of all three statements was Petitioner's explanation for how he had come into possession of Riker's stolen property (that he was driving to the Board of Education) and why he had been observed driving away from her apartment earlier that day. The jury heard that explanation in the 911 call and in Petitioner's statement to the Mt. Vernon police. It also heard that Petitioner volunteered this information entirely of his own accord. (Tr. 721-22; Respt.'s Ex. 1, at 1 (Petitioner stated in the 911 call that "[he] was in Yonkers" and "was coming from the Board of Education" when he encountered the man with the stolen bags).)[9] *Why* Petitioner specifically claims to have been going to the Board of Education is, to be sure, a background detail to Petitioner's tale, but it can hardly be said to have been *critical* to it.[10] And, the jury *did* hear that Petitioner stated he had been coming from the Yonkers Board of Education.

To summarize, this case is a far cry from the relatively narrow set of cases in which courts have found an application of a rule of evidence to be unconstitutional.[11] Plaintiff's

_____

understanding?

. . . .

[Morra]: He made a reference to the Board of Education, but just exactly what it was, you know, I don't recall.

[9] The jury also heard Morra's testimony that the police were not looking for Petitioner when he volunteered his information to the Mt. Vernon police, and that Petitioner was not in custody when he made his statement there.

[10] For this same reason, even if the trial court's evidentiary rulings had been wrong under New York state law, the Jankowski statement would not have "create[ed] a reasonable doubt that did not otherwise exist" had it been admitted. *Hawkins*, 460 F.3d at 244 (internal quotation marks omitted).

[11] *See, e.g., Holmes*, 547 U.S. at 329-31 (rule preventing the introduction of evidence showing guilt of a third party, no matter how strong, where *prosecution's* evidence of guilt, if credited, is strong); *Welcome v. Vincent*, 549 F.2d 853, 854 (2d Cir. 1977) (preclusion of defense

21

statement to Jankowski statement suffered many of the deficiencies in reliability that characterize hearsay testimony, so the trial court's exclusion of the testimony was not "arbitrary" or "disproportionate." Because of this, and because the statement — which contained largely redundant information that the jury had already heard and evidently disbelieved — would have added little, if anything, to Petitioner's defense, it was neither contrary to nor an unreasonable application of clearly established federal law for the Appellate Division to conclude that the statement's exclusion did not violate Petitioner's constitutional right to present a complete defense. *See* 28 U.S.C. § 2254.

---

witness testimony regarding the *witness's* confession to the crime for which petitioner was on trial resulted in a fundamentally unfair trial); *People v. Robinson*, 679 N.E.2d 1055, 1058-60 (N.Y. 1997) (holding that the exclusion of defendant's fiancee's grand jury testimony, which indicated that fiancee was an eyewitness and that sexual contact between defendant and third party was consensual, violated defendant's due process rights where declarant was unavailable and testimony bore sufficient indica of reliability).

### III. Conclusion

For the reasons stated above, the Court finds that Petitioner's claims do not warrant habeas relief. Accordingly, it is

ORDERED that the Report and Recommendation dated November 16, 2010 is ADOPTED.

It is further ORDERED that Petitioner's writ of habeas corpus is DENIED.

It is further ORDERED that because Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue, *see* 28 U.S.C. § 2253(c)(2); *Lucidore v. N.Y. State Div. Of Parole*, 209 F.3d 107, 111-12 (2d Cir. 2000).

It is further ORDERED that the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3) that an appeal from this Order would not be taken in good faith.

It is further ORDERED that the Clerk of the Court is respectfully directed to enter a judgment in favor of Respondent and to close this case.

SO ORDERED.

Dated:     White Plains, New York
          September 27, 2012

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

23

Service List

For Mailing by Clerk's Office:

Derek Livingston
(01-A-2302)
Eastern Correctional Facility
Box 338
Napanoch, NY  12458

John James Sergi, Esq.
Office of the Westchester County District Attorney
111 Dr. Martin Luther King, Jr. Blvd.
White Plains, NY 10552

Copy To:

Honorable George A. Yanthis
United States Magistrate Judge